HATTIE K. CRAWFORD *v.* JENNIE STEWART.

No. 1192.

MRS. W. H. CRAWFORD *v.* MRS. VIOLET FEELEY.

No. 1193.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.
HON. C. S. FRANKLIN, JUDGE.

ARGUED NOVEMBER 13, 1919.          DECIDED NOVEMBER 24, 1919.

KEMP, J., AND CIRCUIT JUDGES DEBOLT AND BANKS
IN PLACE OF COKE, C. J., AND EDINGS, J., ABSENT.

MASTER AND SERVANT—*period of hiring.*

The mere fact that the rate of compensation is agreed upon be-

tween master and servant at a certain sum per month does not in the absence of other evidence fix the period of hiring at one month.

SAME—*indefinite hiring—terminable at will of either party.*

A contract of hiring which specifies no time which it is to run, there being no facts proven from which it can be inferred that any particular time was contemplated by the parties, is a hiring for an indefinite time and may be terminated at will by either party.

OPINION OF THE COURT BY KEMP, J.
(Circuit Judge DeBolt, dissenting.)

The two above entitled cases were tried together in the circuit court, the evidence offered being applicable to both cases. The plaintiff brought these suits originally in the district court of Honolulu to recover of each of the defendants the sum of ten dollars for services for the month of December, 1917, in hauling the defendants from Honolulu to the Waipahu school and return. Each defendant tendered five dollars into court and plead a prior tender of a like amount. The judgment of the district court was for the amount tendered. The plaintiff appealed to the circuit court and trial was there had jury waived and a like judgment rendered. The plaintiff is here upon writs of error and has assigned the following errors: (1) The court erred in holding and deciding that the contract sued upon by implication contained an understanding between the parties thereto that although a contract from month to month it was to be a contract for only approximately a half month during the month of December, 1917; (2) the court erred in entering judgment for the defendants as aforesaid, and (3) the court erred in denying the plaintiff's motion for a new trial duly made and heard in open court on June 17, A. D. 1919. The motions for new trial are not brought up and the assignments complaining of their denial cannot therefore be considered.

An examination of the evidence is necessary to a de-

termination of the questions presented by the other as-
signments of error. It appears from the evidence that
the defendants were in 1917 school teachers residing in
Honolulu and teaching in the Waipahu school; that
shortly prior to the 1st day of November, 1917, the de-
fendant Jennie Stewart and another teacher, Miss Ruth
Mossman, by telephone engagement met the plaintiff,
Mrs. Crawford, at the Palace of Sweets in Honolulu and
entered into an agreement with her to carry them from
Honolulu to Waipahu and return five days out of the
week at the rate of ten dollars per month, no mention
being made of the length of time the service was to be
performed. This contract or agreement was made in be-
half of five "girls or women" who were teachers of the
Waipahu school, and in behalf of one who was teacher
of the Pearl City school and who was to pay but eight
dollars per month. Nowhere in the evidence does it ap-
pear that Miss Stewart and Miss Mossman, or either of
them, were authorized to represent the other defendant,
Mrs. Feeley, or that the terms of the contract or arrange-
ment made by them with the plaintiff were approved by
her or were ever communicated to her. It affirmatively
appears that the plaintiff never spoke with Mrs. Feeley
of the matter. It also appears that at the time Miss
Stewart and Miss Mossman made the agreement with the
plaintiff it was agreed that the plaintiff would have the
agreement reduced to writing and presented to them for
signatures; that the writing was never produced but that
on several occasions some of the girls asked plaintiff
about it and were told that it was not yet ready. It ap-
pears that the defendants in company with the other
teachers were carried to and from school at Waipahu
through the month of November 1917, for which they
each at the end of said month paid the plaintiff the sum
of ten dollars; that all of the said teachers continued to

be carried by the plaintiff up to and including the 14th day of December, 1917, when the Christmas holidays began; that some time between the 14th day of December, 1917, and January 1, 1918, each of the defendants tendered to the plaintiff the sum of five dollars for her services up to and including December 14, which was refused. It also affirmatively appears that at the time of making the agreement no mention was made of the Christmas holidays.

At the conclusion of the evidence the court said: "There is no question but that the contract was made between the two parties for passage five days out of the week at the rate of ten dollars a month. There is further no question about the fact that no mention was made whatever of any holiday, or the Christmas holidays particularly. So there being no dispute as to the facts it is simply a question of law as to the effect of such a contract and its binding force." Judgment was thereupon rendered that plaintiff have and recover from each defendant the sum of five dollars which said sum of money is deposited with and in the custody of the clerk of the circuit court and that the defendants and each of them have and recover from the plaintiff her costs herein.

The plaintiff contends that the contract entered into, as shown by the foregoing facts, was one for services to be rendered from month to month and that the service having commenced for the month of December the contract could not be terminated prior to the end of the month except by mutual consent of the parties. If plaintiff is correct in her contention that the contract was one for service to be rendered from month to month then she is correct in her further contention that the contract could not be terminated prior to the end of the month without her consent. On the other hand, if it was a

contract of employment for an indefinite period, it could be terminated at will by either party. In 26 Cyc. at 980, 981, the law on this subject is stated as follows: "A contract of service for a definite period terminates by its own terms at the end of such period, and where the hiring is by the day, or from month to month, either party has a right to terminate it at the end of any particular day or month, but a contract from month to month can be terminated only at the end of a month except by consent. * * * A contract of employment for an indefinite term may, in the United States, be terminated at the will of either party."

The fact upon which plaintiff relies as establishing her contention that the contract involved in these cases is a contract for services to be rendered from month to month is that the services were to be paid for at the rate of ten dollars per month, her contention being in effect that from this fact alone it will be inferred that the contract was for a month and having entered upon a second month the contract could not be terminated except at the end of the month without her consent.

This is a very important question in this case—in fact is decisive of the question involved—and we do not find that it has ever been decided in this jurisdiction. However, there are many American decisions on the question which we have examined as carefully as we are able to do and conclude that plaintiff's contention is not in accord with the weight of American authority.

In 26 Cyc. 974, the rule is thus stated: "In the United States a general or indefinite hiring is presumed to be a hiring at will, in the absence of evidence of custom, or of facts and circumstances showing a contrary intention on the part of the parties. While it is generally held that the fact that a hiring at so much per day, week, month, quarter, or year raises no presumption that the

hiring was for such a period, but only at the rate fixed for whatever time the party may serve, yet the rate and mode of payment are often determinative of the period of service, and in some cases it has been held that they do raise a presumption as to the period of service."

Wood, in his work on the Law of Master and Servant, Sec. 134, after stating the English rule to the effect that a general hiring or a hiring by the terms of which no time is fixed is a hiring for a year, and concluding that the rule of the English courts to this effect has no application to similar questions in our courts, says: "With us the rule is inflexible that a general or indefinite hiring is *prima facie* a hiring at will and if the servant seeks to make it out a yearly hiring the burden is upon him to establish it by proof. A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring and no presumption attaches that it was for a day even but only at the rate fixed for whatever time the party may serve. It is competent for either party to show what the mutual understanding of the parties was in reference to the matter but unless their understanding was mutual that the service was to extend for a certain fixed and definite period it is an indefinite hiring and is determinable at the will of either party, and in this respect there is no distinction between domestic and other servants. But when from the contract itself it is evident that it was the understanding of the parties that the time was to extend for a certain period, their understanding, fairly inferable from the contract, will control.  * * *  So where the contract is for work at so much a day for one month or any other period or at so much a month for six months, no time being fixed for payment, full performance is a condition precedent to a right thereto. But if there is any special custom applicable to the business by which payment becomes due

weekly, monthly or otherwise, the parties will be presumed to have contracted with reference thereto and payment must be made in accordance therewith, but such custom must be certain and well defined.  But a contract to pay one eight hundred dollars a year for services is not a contract for a year but a contract to pay at the rate of eight hundred dollars a year for services actually rendered and is determinable at will by either party. Thus it will be seen that the fact that the compensation is measured at so much a day, month or year does not necessarily make such hiring a hiring for a day, month or year but that in all such cases the contract may be put an end to by either party at any time unless the time is fixed and a recovery had at the rate fixed for the services actually rendered."

In the case of *Howard* v. *E. Tenn. V. & G. Ry. Co.*, 91 Ala. 268 (8 So. 868), it was held that a contract whereby a person hired at a certain amount per month to travel and work for a railroad to induce capitalists to make investments along its line and to induce excursionists to travel over its road, not being for any definite period of time, is terminable at any time by either party.

In *Kansas Pacific Ry. Co.* v. *Roberson*, 3 Colo., 142, which was a suit by Roberson against the railway company to recover $3000 alleged to be due him from the company as its agent on the Pacific Coast, the facts were that in the summer of 1870 one Moffat was in San Francisco and received a telegram from the president of the Kansas Pacific Railway Company asking him to look out for a suitable person for agent of the company. Moffat telegraphed back recommending Roberson.  After Moffat returned to Denver he telegraphed Roberson at the instance of the officers of the company asking what salary he would require.  Roberson replied $3000 per annum.  On the 20th of September, 1870, Roberson received

a telegram from the general superintendent of the company as follows: "Will engage you to commence October 1st; the general ticket agent, R. G. Grinnell, will send you instructions by that date." Roberson subsequently received instructions as to his duties and entered upon his employment October 1. In February, 1871, Roberson received a letter from the general ticket agent of the company stating that the company had concluded to discontinue the San Francisco office after March 1, 1871, and discharging him effective upon that date. It appeared that Roberson had received from the company $1250 for five months' service and that after March 1, 1871, he had worked for other parties at a compensation of $150 per month until October 1, 1871. It does not appear from the evidence that in Roberson's correspondence with any of the officers of the company any period of service was fixed. It was contended by Roberson that these facts show a yearly hiring. In discussing this question the court said: "If now we advert to the situation of the parties, which is also a circumstance to be considered where the intention is not clearly expressed, we find nothing to support the theory that the contract was to continue for a year. Appellant was about to open an office in a distant city for the purpose of selling tickets and securing traffic over its road, and whether it would be profitable to maintain the office could not then be known. An intention to keep the office open for a definite time was not expressed and it is not reasonable to suppose that appellant intended to do so if it should result in loss. * * * In all that took place between the parties and the circumstances under which they acted there is nothing to show a contract for a year unless it can be inferred from the answer of appellee to Moffat's telegram, and that, we think, cannot be done. * * * As to the English rule that a general hiring shall be taken

to be a hiring for a year (2 Chitty's Contracts, 841) we have not found any American case which recognizes it and we think it has not been adopted in this country."

In *Greer* v. *Arlington Mills Mfg. Co.*, 43 Atl. (Del.) 609, the plaintiff Greer alleged that he entered into a contract or agreement with the defendant company on March 17, 1886, under which he was to receive $5000 a year for his services as manager of said company; that he did act as manager from March 17, 1886, up to about the last of the year 1896, at which time he was discharged by the defendant company without any sufficient cause and without any fault on his part. He contended that the general hiring in 1886 was a hiring for the period of one year, and having continued to render the same service after the first year it became a hiring from year to year. He insisted that having been discharged in December, 1896, when the year would not have expired until March 17, 1897, he was entitled to recover that proportion of the salary for a year which the time from the date of discharge until March 17, 1897, bears to the whole year. The answer of the defendant was that the hiring was for an indefinite period and it therefore had the right to terminate the employment at will. The court, after discussing and disapproving the English rule to the effect that where there is a general hiring and nothing is said as to its duration the contract is understood to be for a year, quoted with approval from Wood, Law of Master and Servant, the paragraph above quoted by us, and concluded that the hiring in that case was a general hiring and terminable at the will of either party.

*Edwards* v. *Railroad Co.* 121 N. C. 490, was an action for the recovery of an alleged balance of salary due the plaintiff as general storekeeper for the defendant. The contract of employment of the plaintiff by the defendant was contained in a letter dated July 10, 1894, addressed

to the plaintiff by the general manager of the railroad company, the material part of which is as follows: "I beg to advise that you have been appointed general store-keeper for the system to take effect July 15. Your salary will be eighteen hundred dollars a year." The court in construing this contract said: "The contract before us is not specific as to the *term* of service,—certainly not so expressed in the writing. The plaintiff does not so insist but says a reasonable construction thereof leads to the conclusion that the parties intended a one year term of service. We are not able to see that such was their intention. It seems reasonable that if they had so intended they would have expressed themselves in more definite and explicit terms on so important a feature of their agreement. Why they were not more definite we cannot tell. They may or may not have had reasons for leaving the writing as it is or they may not have called their minds to that feature of the contract. It does not seem unreasonable that the parties intended that the service should be performed for a price that should aggregate the gross sum annually leaving the parties to sever their relations at will for their own convenience. All business men know they can make legal contracts to suit themselves, also the importance of saying what they mean in business matters in plain and definite terms."

*Evans* v. *Railroad Co.*, 24 Mo. App. 114, involved a claim on the part of the plaintiff that he had been employed for a month and that his employment was from month to month. The court in this case sets out the plaintiff's own evidence, which is in effect that the party representing the defendant company who employed him did not state that he was being employed for a day or for any length of time; "he did not say whether it was for a day or month or year or what time." He also testi-

fied that "when the contract was made he did not say from when it ran, from the first, may be, or from the tenth, or otherwise. I agreed to work my month out for $115 a month." He further said: "There was never any distinct agreement between me and Mr. Harris as to the length of time I was to be employed nor as to when my employment began or when it ended." In response to a question by the court he said: "All the contract as made by Mr. Harris was $115 a month. Didn't say when it started or when it was to end." After referring to decisions from other states to the effect that if the payment of a monthly or weekly wage is the only circumstance from which the contract is to be inferred it will be taken to be a hiring for a month or a week the court cited and followed other Missouri cases holding that an indefinite hiring at so much per day, per month or per year is a hiring at will and may be terminated by either party at any time.

We have quoted at length from the decisions on this question because of the importance of the question involved but it does not seem necessary to do more than cite other cases to the same effect without quoting therefrom. *Booth* v. *India Rubber Co.*, 36 Atl. 714; *Railroad Co.* v. *Offutt*, 36 S. W. 181; *DeBriar* v. *Minturn*, 1 Cal. 450; *Prentiss* v. *Ledyard*, 28 Wis. 131; *Copp* v. *Coal & Iron Co.*, 46 N. Y. S. 542; *Kirk* v. *Hartman & Co.*, 63 Pa. St. 97; *Finger* v. *Brewing Co.*, 13 Mo. App. 310; *Haney* v. *Caldwell*, 35 Ark. 156, 168.

There have been several American cases cited by the plaintiff which maintain a different principle from that so strongly affirmed and clearly recognized in the authorities above quoted and cited. They are to the effect that when a contract for services is made at so much per month without any agreement as to the duration of the service the intention of the parties to contract for

that period of time will be inferred. We have no doubt that the great preponderance of the best considered cases in this country recognize and affirm the rule laid down by Wood in his work on Master and Servant and which he terms the American rule, and we therefore hold that a hiring at a certain sum per month, no time being specified, unaccompanied by any facts or circumstances or any proof from which a different intention may be inferred, and when the testimony as to the contract is, as in this case, not conflicting, is an employment for an indefinite term and not for a month, and terminable at the will of either party. Such, according to the testimony of the plaintiff, was the contract with which we are now dealing. She testified that the contract was for ten dollars a month and made no mention of any period of time which the contract was to run. Other witnesses testified in the case and no attempt was made to prove any fact from which in our opinion the intention of the parties to contract for a definite period of time could be inferred.

Plaintiff's counsel in their able brief have cited two Hawaiian cases to the effect that contracts are to be interpreted according to the intention of the parties as they have expressed it and that words in a contract are to be construed in their plain and ordinary meaning, and where a meaning can be derived from them without the interpolation of other words this meaning must be received as the one intended by the parties. If the parties were desirous of making a contract for a definite period of time there was nothing to prevent them from including such term in their contract. They have failed to do this and we see no reason why we should ingraft upon the contract a term which the parties have failed to include in it. We think the more reasonable rule is the one which we have adopted, that is, where no term has been

specified for the contract to run none will be inferred from the mere fact that payment is to be so much per month but will be a contract terminable at the will of either party. The amount tendered by the defendants to the plaintiff prior to the institution of the suit and again tendered in court was sufficient to meet the obligation resting upon them to pay for the services at the rate agreed upon.

We therefore hold that the court committed no error in rendering the judgments under consideration.

The judgments are affirmed.

*J. W. Cathcart* and *B. S. Ulrich* (*Thompson & Cathcart* on the brief) for plaintiff.

*G. K. French* for defendants.

### DISSENTING OPINION OF CIRCUIT JUDGE DeBOLT.

I respectfully dissent from the majority opinion in this case.

The records before us show that the plaintiff and defendants, in the latter part of 1917, entered into an oral contract whereby they mutually agreed that the plaintiff should carry the defendants by automobile from Honolulu to Waipahu and back, five days in a week, Saturdays and Sundays excepted, for which services each defendant agreed to pay the plaintiff $10 a month.

The services were rendered according to the contract for the month of November, 1917, and were paid for at the end of that month. From December 1, 1917, up to and including December 14, the plaintiff continued to carry the defendants as in November. But from and after December 14, without any notice whatsoever, the defendants failed to appear at the appointed time and place, although the plaintiff was on hand and ready each morning during the remainder of the month of December to carry them pursuant to the contract. There was

no dismissal or discharge of the plaintiff, nor any notice that her services were no longer required.

Upon the facts thus disclosed by the records, the cases, as I view them, do not even come within the rule as laid down by the court in the majority opinion. While it is there held that the contract could be terminated at any time, the court does not hold, as I read the opinion, that the contract could be terminated without notice. Neither does the court cite in that opinion a single authority holding that a contract, such as the one under consideration, can be terminated without notice. And I venture to say that not a single authority to the contrary can be found. It is a fundamental and indispensable principle of Anglo-Saxon jurisprudence that no person can be legally affected in or deprived of his lawful rights without notice. *Nichols* v. *Coolahan*, 10 Met. (Mass.) 449, 450; 1 Labatt's Master & Servant (2d ed.) Sec. 213, p. 667; Id. Sec. 187, p. 583; Id. Sec. 233, p. 722 and n. 1; 13 C. J. 618; 26 Cyc. 980-987; *Harper* v. *Hassard,* 113 Mass. 187, 190.

In my opinion the mere silence of the defendants or their failure to appear at the appointed time and place to accept the services agreed to be rendered could not and did not operate *ipso facto* to terminate the contract in question. Is it possible that a party may, under the sanction and solemnity of the law, enter into a valid contract (though it be one for services to be rendered from month to month) and without even so much as the raising of a hand or the uttering of a single word cast off his contractual relations and step aside absolutely free from his solemn and theretofore legal obligations?

Upon the facts and circumstances disclosed by the records it is obvious, as I view the situation, that the parties, in the first instance, contracted for services to

be rendered for the entire month of November. Having thus agreed upon the character of the services to be rendered and the time for which they were to be so rendered, as well as the amount of the payment therefor, the plaintiff entered upon the performance of the services thus contracted for and at the end of the month each defendant paid the plaintiff the agreed sum of $10.

The circumstance of agreeing on weekly, monthly, quarterly, or half-yearly payments of wages is held in many jurisdictions to be sufficient of itself to create a presumption of a hiring for the period covered by each payment. This, in my opinion, is the better rule, and accords with reason and justice. Upon this question see Labatt, *supra,* Sec. 168; Id. Sec. 169, p. 539; *Kellogg v. Citizens' Ins. Co.,* 94 Wis. 554; *Smith* v. *Theobald,* 5 S. W. 394; *Magarahan* v. *Wright,* 10 S. E. 584; *Tatterson* v. *Suffolk Mfg. Co.,* 106 Mass. 56; *Cronemillar* v. *Duluth-Superior Milling Co.,* 134 Wis. 248; *Maynard* v. *Royal Worcester Corset Co.,* 200 Mass. 1.

And in all those jurisdictions where it is held that a hiring at so much per month or year, without more, is an indefinite hiring, this rule gives way where the surrounding facts and circumstances show a different intention of the parties. *Foltz* v. *Fuller,* 38 App. Cas. (D. C.) 139; *Weidman* v. *United Cigar Stores Co.,* 132 Am. St. Rep. 727.

As further and more clearly showing that the parties intended a hiring for an entire month, to be paid for by a gross sum, it will be observed that nothing was said as to payment from day to day, or from week to week, at the beginning of or during the month, but that upon the rendering of the full month's services they were then paid for. It seems perfectly clear that the parties considered the hiring for an entire month. The parties having, apparently, so intended and understood their contract to

be a hiring for an entire month the court is bound by that intention.  13 C. J. 521.

It being apparent from all the surrounding facts and circumstances that the parties intended and contemplated the hiring in the first instance to be for the entire month of November, it, therefore, follows, that inasmuch as the parties continued their contractual relationship into the month of December precisely as it had theretofore existed, free from modification or break in its continuity, they must, necessarily, be understood as having contracted for such services for the entire month of December. Labatt, *supra*, Secs. 230, 231.  The author (Sec. 231) says: "The presumption that, where the relationship of master and servant is continued after the expiration of the agreed term, the parties intend that the renewed engagement shall subsist for the same period as that covered by the original contract, is entertained not only in cases in which the duration of the first employment was fixed by an express stipulation, but also in cases in which that duration is itself a matter determinable with reference to a presumption of fact."  In this connection see also *Zender* v. *Seliger-Toothill Co.,* 39 N. Y. S. 346; 26 Cyc. 976; 13 C. J. 626.

In 26 Cyc. 980, 981, it is said: "A contract of service for a definite period terminates by its own terms at the end of such period, and where the hiring is by the day, or from month to month, either party has a right to terminate it at the end of any particular day or month, but a contract from month to month can be terminated only at the end of a month except by consent."

In *Young* v. *Lewis,* 9 Tex. 73, the court said: "A hiring by the month at so much per month is a hiring from month to month, each party having a right to terminate it at the expiration of a month, but not after another month has commenced to run."

In *Jones* v. *Vestry of Trinity Parish,* 19 Fed. 59, 61,

the court said: "There is a presumption of law that a person employed at a monthly salary is engaged by the month, so that either party may terminate the contract at the end of any month, unless it affirmatively appears that a definite period of employment was contemplated by the parties to the contract."

In *Tennessee Coal, Iron & Railroad Co.* v. *Pierce,* 81 Fed. 814, the court said: "A contract between a corporation and a workman who has received injuries while in its service, that he shall be paid a given rate of wages per month, and shall render such services as he can, without any stipulation as to the duration, is not an undertaking to pay such workman an annuity during the remainder of his life, but a contract of employment by the month, which may be terminated by either party at the end of any month."

The court in *Re Hudson,* 12 Fed. Cas. No. 6831, said: "A hiring at monthly wages imports that the engagement is by the month, terminable with each month, at the option of either party."

In *Dunbar* v. *Cuban Land & Steamship Co.,* 75 N. Y. S. 498, the court said: "Where a plaintiff is employed for an indefinite time at a fixed weekly sum, the contract may be determined by either party at the expiration of any week."

In *Beach* v. *Mullin,* 34 N. J. L. 343, 344, the court said: "The entirety of a contract does not depend upon its subject matter. An entire contract is a contract the consideration of which is entire on both sides. Whenever there is a contract to pay a gross sum for a certain definite consideration the contract is entire, and not apportionable either in law or in equity. Story on Contracts, §22. A contract to pay $16 for a month's service is as entire in its consideration as is a contract to pay a certain sum for a single chattel, or for a specified

number of chattels. The contract of hiring in this case was, that the plaintiff should work for the defendant for $16 a month. Nothing further was said as to the term of service. The reservation of wages, payable monthly or weekly, will not control the contract so as to destroy its entirety, when the parties have expressly agreed for a specified term, as a year. But if the payment of monthly or weekly wages is the only circumstance from which the duration of the contract is to be inferred, it will be taken to be a hiring for a month or a week."

In the case at bar the parties did not only agree that the gross sum of $10 was to be paid for an entire month's services, but in pursuance thereof each party proceeded to carry out the contract in its entirety and as a single and entire contract in all respects—both as to time and as to payment. The entire month's services were rendered and the gross sum of $10 in full payment therefor was made at the end of the month, the parties thereby showing that they understood that the hiring was for a month. Thus, not only from the express terms of the contract itself, but also from the conduct of the parties in its performance, the hiring, obviously, was for an entire month for an entire sum. And it appears from the authorities that the courts are in substantial agreement in holding a hiring at a specified sum per month to import an engagement by the month. This accords with reason and common sense. When any person, layman or lawyer, speaks of a certain sum per day, or week, or month, he means just what he says, namely, a gross sum for an entire period of time.

Thus in *Moss* v. *Decatur Land Improvement and Furnace Company*, 30 Am. St. Rep. 55, a case almost identical in its facts with the case at bar, except that the plaintiff there was discharged, which is not the fact in the case at bar, the court said: "If one is employed to

be paid by the month a designated price, this constitutes an entire contract by the month, which the employer cannot terminate at will, and under which he is liable for a month's wages if he discharges his employee without cause before the expiration of the month."

In *Dodson-Braun Mfg. Co.* v. *Dix,* 76 S. W. 451, is an instance of an oral contract for services to be rendered from month to month, in which the services had been commenced for a particular month, just as in the present case, the holding of the court being, in effect, that the contract could not be terminated until the end of the month in question. The court said in this connection: "The only contention of appellant is that the employment of appellee was for no particular length of time, and that therefore, it had the right to discharge him at any time without cause. The evidence relied upon to support this contention is the following testimony of appellee: 'At the time I was employed by Dodson-Braun Mfg. Co. I was not employed for any particular length of time, except from month to month, nor did I agree to work for any specific time, except from month to month. I did not designate to Mr. G. K. Lyon the period of time that I would work for the Dodson-Braun Mfg. Co., but Mr. Lyon and myself both agreed that the employment should be from month to month, at a salary of $100.00 per month and expenses.' This undoubtedly shows an employment from month to month. When the hiring is from month to month each party has the right to terminate it at the end of the month; but after another month has begun to run, as is shown by the evidence in this case, neither can terminate it without consent of the other until the month then running has elapsed. *Young* v. *Lewis,* 9 Tex. 73; *Jones* v. *Vestry of Trinity Parish* (C. C.) 19 Fed. 59; Addison on Contracts, See 886."

Labatt, *supra,* at the end of Sec. 164, after an ex-

Opinion of Circuit Judge DeBolt.

tended discussion of the subject now under consideration, both in England and in the United States, and distinguishing between servants of a superior and those of an inferior grade, says: " For practical purposes indeed it may be said that a contract under which a servant is to be paid a certain rate of wages measured by the week, fortnight, or month, would almost invariably be understood as binding the master by implication to pay the wages at the end of each week, fortnight, or month."

The authority last cited, at Sec. 168, upon the question under consideration, also says: "The American decisions, so far as they go, betoken the adoption of a general rule to the effect that a stipulation for the payment of wages at certain regular intervals shorter than a year should, in the absence of countervailing evidence, be construed as importing that the duration of the contract is the length of the period between two of the payments."

In my opinion the facts disclosed by the records constitute a contract of hiring for the entire month of November for the gross sum of $10, and, inasmuch as the services, identical in kind, were continued, without any break in continuity—without any change or modification—into the month of December, the presumption of fact, as well as of law, is, to my mind, conclusive that the parties intended the hiring to cover and include the entire month of December upon the same terms, and that the plaintiff was, accordingly, entitled to judgment for the sum of $10 against each of the defendants.