**Jack R. STANCIL, Plaintiff,**

v.

**MERGENTHALER LINOTYPE COMPANY, A DIVISION OF ELTRA CORPORATION, Defendant.**

Civ. No. 82–0023.

United States District Court,
D. Hawaii.

Feb. 29, 1984.

Charles H. Brower, Honolulu, Hawaii, for plaintiff.

Gregory M. Sato, Torkildson, Katz, Jossem & Loden, Honolulu, Hawaii, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING SUMMARY JUDGMENT

FONG, District Judge.

### I. INTRODUCTION

Plaintiff Jack R. Stancil was employed by Defendant MERGENTHALER LINO-TYPE COMPANY as a salesman for six months when he was terminated due to poor sales as a result of a general decline in business conditions. Plaintiff is suing Defendant in contract for an alleged breach of a "long-term employment agreement" and in tort for misrepresentation and damage to reputation. Defendant moves for Summary Judgment because: (1) the employment agreement at issue was for an indefinite duration and was therefore terminable at the will of either party; (2) it is well established that a plaintiff cannot maintain a cause of action for injury to reputation arising out of an alleged breach of an employment agreement; and (3) Plaintiff has conceded that there was no malice or intent to deceive in connection with Plaintiff's employment.

### II. FINDINGS OF FACT

In early 1981, Mergenthaler believed there was a potential market for sales of its printing equipment and contemplated hiring a salesman to handle local sales in Hawaii. Mergenthaler flew Plaintiff to San Francisco to be interviewed by Donald Poirier, Western Regional Sales Manager (Deposition of Jack Stancil, "herein Tr.", Tr. 6 at 15–18). The interview was characterized by Plaintiff as an attempt by Poirier to sell the company and by Plaintiff to sell himself (Tr. 10 at 4–6). Poirier informed Plaintiff the position contemplated was as "working sales manager" for the State of Hawaii (Tr. 8 at 17–19). Poirier believed that under his "long-range forecast", Hawaii would warrant establishment of a working sales office which Plaintiff would head; but that initially he would be the sole representative (Tr. 8 at 19–25; Tr. 9 at 1–2). Poirier informed Plaintiff about Company policy to equip sales personnel with a new company-owned car every two years, or every hundred thousand miles (Tr. 9 at 2–4). Poirier informed Plaintiff of stock options available to him after one year in the Company and of two weeks annual vacation (Tr. 12 at 18–21). Poirier also informed Plaintiff he would receive a $16,000.00 annual salary and a guarantee of $500.00 monthly commission for six months after the first thirty days of employment since Hawaii was virgin sales territory (Tr. 9 at 16–21; Tr. 31 at 22–25). Plaintiff told Poirier during the interview that in the printing equipment sales business he had "20 good years to offer somebody" (Tr. 10 at 7–8). Poirier responded, "You got it." (Tr. 10 at 9). Plaintiff was then informed that the final word regarding his employment rested with corporate headquarters in Melville, New York (Tr. 10 at 19–20). Approximately three days after Plaintiff had returned to Hawaii, Poirier communicated to Plaintiff that his employment application had been approved and that he would be receiving a confirmation letter from Melville stating the terms of the agreement (Tr. 10 at 20–24). On May 18, 1981, Plaintiff signed the employment agreement letter from Mergenthaler. Said letter re-stated the annual salary to be paid on a bi-weekly basis, as well as the $500.00 per month commission guarantee for the first six months after the first thirty days of employment. The letter *did not* mention any term or duration of employment.

In late November 1981, Poirier contacted Plaintiff and stated he would be coming to Hawaii to meet with him and to make sales calls (Tr. 27 at 23–25; Tr. 28 at 1–3). On December 1, 1982, at a breakfast meeting Poirier told Plaintiff the reason he had come to Hawaii was to inform Plaintiff

personally that Mergenthaler was terminating Hawaii as a sales territory (Tr. 28 at 15–21). Poirier explained that poor economic conditions necessitated termination of the sales territory (Tr. 28 at 25; Tr. 29 at 1–11). Even Plaintiff agreed, at his deposition, that economic conditions provided the sole reason for his termination (Tr. 43 at 11–25; Tr. 44 at 1–3).

Poirier arranged to extend Plaintiff's employment five days to enable Plaintiff to receive commissions on equipment sold during his employment (Tr. 29 at 19–25; Tr. 37 at 20–25; Tr. 38 at 1). Upon finding that Plaintiff no longer owned a personal car, Poirier also allowed Plaintiff to use the company car for thirty days after his termination (Tr. 30 at 1–13; Tr. 38 at 2–9). In addition, Plaintiff was offered two weeks of severance pay (Tr. 38 at 10–14).

## III. CONCLUSIONS OF LAW

### A. ISSUE

The central issue at bar is whether Plaintiff's employment agreement with Defendant was for an indefinite term and terminable at the will of either party or whether the agreement was a "long term" agreement and, therefore, Defendant is liable to Plaintiff for damages from termination of Plaintiff's employment prior to the expiration of the "long term" period.

### B. THE ERIE DOCTRINE

■ As a general rule the federal courts, when presiding over diversity actions where no federal statutory or constitutional claim is implicated, must apply the law of the state in which it sits, as articulated by the highest court of that state. Where the state court has not had the opportunity to decide that issue, the federal district court may predict what the state court would hold if faced with that issue. *Stephens v. State Farm Mut. Auto. Ins. Co.,* 508 F.2d 1363, 1366 (5th Cir.1975) See: 1A, Pt. 2 *Moores,* Fed. Practice ¶ 0.309(2) (1983). In making this prediction, the federal court should not surrender its own judgment as to local law based upon mere dicta or other chance expression by state judges. *New England Mutual Life Insurance Company v. Mitchell,* 4th Cir., 118 F.2d 414, 419, cert. denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505 (1941). In summary, state judicial decisions, under the Erie Doctrine, are binding on federal courts in diversity actions and federal courts are not free to engraft upon these state decisions, exceptions or modifications which have not been adopted by the state courts. *Day & Zimmerman, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975).

### C. THE EMPLOYMENT AT WILL DOCTRINE

■ In Hawaii, the Employment At Will Doctrine still remains relatively intact with only slight modification.[1] The Employment At Will Doctrine holds that where an employment agreement is for an indefinite period of time, the employment agreement

---

**1.** The Hawaii Supreme Court in *Parnar v. Americana Hotels, Inc.,* 652 P.2d 625, 631 (Haw.1982) held:

Because the courts are a proper forum for modification of the judicially created at-will doctrine, it is appropriate that we correct inequities resulting from harsh application of the doctrine by recognizing its inapplicability in a narrow class of cases. The public policy exception discussed herein represents wise and progressive social policy which both addresses the need for greater job security and preserves to the employer sufficient latitude to maintain profitable and efficient business operations. We therefore hold that an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject. Of course, the plaintiff alleging a retaliatory discharge bears the burden of proving that the discharge violates a clear mandate of public policy. (Footnotes omitted.)

In the instant matter, Plaintiff did not allege any claim that his discharge violated the public policy exception, therefore his action falls squarely under the Employment At Will Doctrine.

may be terminated at the will of either party. *Crawford v. Stewart*, 25 Haw. 226 (1919).

In *Crawford*, a group of teachers contracted with a woman to provide them with transportation to and from work five days per week at a rate of ten dollars per month. The teachers were transported up to December 14 when the Christmas holiday began. The plaintiff appeared each weekday after December 14 to pick up the teachers who were not present, having no need of her services during the holidays. The teachers tendered payment of five dollars for one half month's services, which plaintiff refused to accept. Plaintiff argued that her employment contract ran for a definite monthly term and thus was owed for a full month's service. The court found for the defendant teachers:

> If the parties were desirious of making a contract for a definite period of time there was nothing to prevent them from including such term in their contract. They have failed to do this and we see no reason why we should engraft upon the contract a term which the parties have failed to include in it.... [W]here no term has been specified for the contract to run none will be inferred from the mere fact that payment is to be so much per month but will be a contract terminable at the will of either party.

*Id.* at 237, 238.

The *Crawford* decision was reaffirmed in footnote 4 to *Parnar v. Americana Hotels, Inc.*, 652 P.2d 625, 628 (Haw.1982). "Thus *Crawford* is for our purposes of historical interest only although it accurately represents the state of our law on the question expressly decided there."

More recently, the Intermediate Court of Appeals of the State of Hawaii in *Vlasaty v. Pacific Club*, 670 P.2d 827 (Haw.App. 1983) reaffirmed the vitality of the *Crawford* decision.

> [E]mployment was under a contract of indefinite duration. Such contract, generally, is "terminable at the will of either party, for any reason or no reason."

*Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 374, 652 P.2d 625, 627 (1982). at 833.

Plaintiff concedes that the written employment agreement does not state any term of employment but nevertheless contends that it was the intent of the parties that Plaintiff's employment be for a "long period" of time. Plaintiff argues that this intent is found in the employment interview where Plaintiff stated that he had "twenty years to give somebody" and Defendant's representative responded "you got it".

Defendant, on the other hand, argues that evidence of this verbal conversation is barred by the parol evidence rule and, assuming *arguendo*, that the Court could consider this evidence, this verbal exchange does not constitute evidence of the parties' intent to create a "long term" agreement.

The Court finds that the parol evidence rule does not apply to the facts of this case. The parol evidence rule is a substantive rule of law that excludes intrinsic evidence of surrounding facts and circumstances existing prior to or contemporaneously with the execution of a written instrument where such evidence seeks to contradict, modify, defeat, or otherwise vary the meaning or legal effect of an unambiguous written instrument. *Cosmopolitan Financial Corporation v. Runnels*, 2 Haw.App. 33, 37, 625 P.2d 390, 395 (Haw.1981).

In this instance the parol evidence rule is not applicable because the employment agreement is ambiguous. The employment agreement begins "this confirms our verbal offer of employment"; therefore it implicates facts outside of the four corners of the employment agreement.

However, even if the Court considers these alleged verbal representations, given the context of the conversation—a job interview where, in Plaintiff's own words, "each side was trying to sell the other"—the Court finds that Plaintiff's statement "I have twenty years of service to offer somebody" and Defendant's reply "you got it" does not constitute sufficient evidence of an intent to formulate an em-

ployment agreement for a definite period of time.[2] Where the employment contract or the surrounding circumstances fail to evidence intent of an employment agreement for a definite period of time, the contract will be construed as a contract for an indefinite period of time and therefore terminable at the will of either party. See: *Eggers v. Armour & Co. of Deleware*, 129 F.2d 729, 731 (8th Cir.1942) and *Buian v. J.L. Jacobs and Company*, 428 F.2d 531, 533 (7th Cir.1970).

At the hearing on Defendant's Motion for Summary Judgment, Plaintiff claimed, for the very first time, that the employment agreement was to last as long as Plaintiff met his sales quota and therefore summary judgment should be denied since there was a dispute as to whether Plaintiff's termination was a result of his failure to meet his sales quota.

██ The Court finds that as a matter of law an employment agreement "as long as Plaintiff meets his sales quota" was an employment agreement for an indefinite period of time and therefore terminable at the will of either party. As a general rule employment contracts which in some form purport to provide for "permanent employment" as long as the employee satisfactorily performs his duties is terminable at the will of either party. 56 C.J.S. *Master and Servant* § 31 (1940). See: *Walker v. Modern Realty of Missouri, Inc.*, 675 F.2d 1002 (8th Cir.1982); *Sartin v. City of Columbus Utilities Comm.*, 421 F.Supp. 393, 401 (N.D.Miss.1976), affd. 573 F.2d 84 (5th Cir. 1978).

██ Further, the Court finds there is no genuine dispute as to any material fact as to the reason for Plaintiff's discharge. Plaintiff admitted that his discharge was triggered by poor economic conditions and not by any failure to meet a sales quota (Tr. 43–44). Moreover, the Court finds that

since Plaintiff's employment agreement was for an indefinite period of time Defendant's reason for discharge of Plaintiff is immaterial since, under the Termination At Will Doctrine, Plaintiff may be terminated for any reason. 56 C.J.S. *Master and Servant* § 31 (1948).

Next, Plaintiff argues that this Court should recognize the detrimental reliance exception to the Employment At Will Doctrine, even though the Hawaii Supreme Court has not adopted this exception. Where a state court has failed to decide an issue, the federal court may predict how the state court would decide that issue, but in doing so, the federal court should not rely upon dicta or other chance expression by a state court. *New England Mutual Life Ins. Co., supra*. 1A, Pt. 2 Moore's *Federal Practice* ¶ 0.309(2) (1983).

██ In reviewing the *Parnar* decision the Court notes that the Hawaii Supreme Court discussed in passing the detrimental reliance exception to the Employment At Will Doctrine but did not adopt this exception. See: *Parnar, supra*, 652 P.2d 626. Thus, in the interest of comity between the federal and state judiciary, the federal court will refrain from adopting this exception to the Employment At Will Doctrine until the Hawaii Supreme Court does so.

In any event, the Court in reviewing the record fails to find any facts to support Plaintiff's claim of detrimental reliance. The Court looks at the facts of the case to determine whether or not there has been detrimental reliance, with the underlying proposition that that reliance must be both reasonable and justifiable. The Court looks at the discussions about the company's health benefits, annual salary, a company car, stock options, yearly vacations, and the hope that the company would prosper in the Hawaii market, and finds that

**2.** And I told him, I says, "you know, I've got twenty plus years in the industry. When it comes to printing and publishing, I know the business, I know the market, I know the people." Of course, selling myself to him. He's selling me this company, I'm selling myself. I said, "I'm forty plus years old." I said, "I'm

not a young kid out looking to make his first million," but I says, "I know the business and in this business I got twenty good years to offer somebody."
And he says, "you got it." So that, to my mind, was job security.
Transcript at p. 10.

these are merely vague hopes for success which do not support detrimental reliance in this case. See: 37 Am.Jur.2d *Fraud & Deceit* § 265 (1968). With reference to Plaintiff's sale of his car and furniture, the Court finds that there is no evidence that Defendant in this case encouraged Plaintiff to sell his car at a loss, or encouraged him to set up an office.[3] The Court, therefore, finds that there is no evidence to be found in the facts of this case, as pled to date, which show that Stancil's reliance was justifiable even assuming the existence of an exception to the Employment At Will Doctrine for detrimental reliance.

D. INJURY TO REPUTATION

Plaintiff claims in tort that he suffered injury to his reputation as a result of Defendant's breach of the employment agreement. Plaintiff alleged in Count II of his complaint:

> 12. That in performing his duties for Defendant under the employment agreement, Plaintiff made certain representations and promises to customers regarding his association with Defendant and the services which Defendant had promised to provide to these customers in the State of Hawaii.
>
> 13. That due to the termination of Plaintiff's employment agreement by Defendant, the Defendant will not be providing the services to customers as promised, and therefore, Plaintiff has suffered damage to his reputation, credibility and standing in the industry in the sum of $100,000.00.

Defendant contends that no such cause of action is cognizable in the State of Hawaii.

Neither the Plaintiff nor the Court, in its review of the law, is able to find any authority to support this cause of action. As such, the federal court is again, under the Erie Doctrine, forced to predict what the Hawaii State Supreme Court would decide if presented with this issue. See: 1A, Pt. 2 Moore's *Federal Practice* ¶ 0.309(2). Turning to general principles of common law, the Court finds that the prevailing view of other jurisdictions is that no such cause of action exists. The Federal District Court for the Eastern District of Wisconsin in *O'Leary v. Sterling Extruder Corp.*, 533 F.Supp. 1205 (E.D.Wis.1982) described the prevailing view as follows:

> The courts seem to be in general agreement that damages for injury to reputation are not properly awardable in a breach of contract suit. *Miller v. Board of Education,* 98 Ill.App.2d 305, 240 N.E.2d 471, 475 (1968) (wrongfully discharged teacher not permitted to recover); *Winship v. Brewer School Committee,* 390 A.2d 1089 1094–5 (Me.1978) (terminated and subsequently reinstated teacher not entitled to recover); *Amaducci v. Metropolitan Opera Assn.,* 33 App.Div.2d 542, 304 N.Y.S.2d 322, 323 (1969) (wrongfully terminated orchestra conductor not permitted to recover); *Skagway City School Board v. Davis,* 543 P.2d 218, 225 (Alaska 1975) (dismissed teacher not entitled to recover); *Volkswagen Interamericana, S.A. v. Rohlsen,* 360 F.2d 437, 446 (1st Cir.1966), *cert. den.* 385 U.S. 919 87 S.Ct. 230, 17 L.Ed.2d 143 (1966) (terminated automobile dealer cannot recover from regional distributor or manufacturer); *Pryles v. State,* 86 Misc.2d 205, 380 N.Y.S.2d 429, 433 (1975) (teaching doctor dismissed for cause not permitted to recover); *Quinn v. Straus Broadcasting Group, Inc.,* 309 F.Supp. 1208, 1210 (S.D.N.Y.1970) (wrongfully terminated radio talk show moderator not permitted to recover).

Wisconsin adheres to this view as well. In *Smith v. Beloit Corp.*, 40 Wis.2d 550, 559, 162 N.W.2d 585 (1968), its Supreme Court held that damages for injury to reputation were not recoverable in a breach of contract action:

3. In his deposition Stancil was asked by Defendant's counsel:

> My question is, did Mergenthaler require that you purchase the equipment that you purchased but were not reimbursed for?

And he replied:

> I can't say they required it.

Tr. 18.

"What then is the measure of damages? The trial court listed a number of factors which he held the jury was entitled to consider in fixing damages. They included the humiliation sustained by a proud man, permanent injury to professional reputation and additional living expenses occasioned by his new employment. These elements of damages aside from being quite speculative in nature, appear to us to fall outside the pale as being outside the reasonable contemplation of the parties and without basis in the record here established. It seems to us that the proper measuring stick for damages is the actual wage loss and actual expenses of relocation incurred by plaintiff and established by the record."

533 F.Supp. at 1209–1210.

■■■ Therefore, until the Hawaii Supreme Court enunciates a decision to the contrary, this Court adopts the majority view that damages for injury to reputation are not properly awardable in a breach of contract suit.

### E. MISREPRESENTATION

■■■ Plaintiff also asserts that Defendant intentionally misled Plaintiff into believing his employment with Defendant would be for a "long term" period. Defendant has moved to dismiss this allegation based on Plaintiff's own testimony that he did not believe that he was misled.

Q. Do you believe that when the statements were made to you in May [during the job interview] that they [Defendant] planned to terminate you in December?

A. No, I don't think I could say that.

Tr. 43.

In light of Plaintiff's own testimony that he did not believe he was misled, the Court finds that there is no genuine issue as to any material fact and Defendant did *not* intend to mislead Plaintiff into believing he was being hired for long term employment.

### IV. ORDER

In light of the foregoing, Defendant is entitled to summary judgment on the grounds that there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.

So ordered.