Richard **MORISHIGE**, Plaintiff,

v.

**SPENCECLIFF CORPORATION, a Hawaii corporation; Nittaku Enterprises Co., Ltd., a Japanese corporation; Nittaku Investment, Inc., a Hawaii corporation; Akiyoshi Nishimura; Eiji Nishimura; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Doe Nonprofit Corporations 1–10; Doe Governmental Entities 1–10, Defendants.**

**Civ. No. 89–00287 DAE.**

United States District Court, D. Hawaii.

Aug. 4, 1989.

Jerry M. Hiatt, Craig K. Shikuma, Bays Deaver Hiatt Kawachika & Lezak, Honolulu, Hawaii, for plaintiff.

George W. Brandt, Beverly Lynne K. Hiramatsu, Stefan M. Reinke, Lyons Brandt Cook & Hiramatsu, Stephen B. MacDonald, C. Michael Hare, Valerie Smith Boyd, Cades Schutte Fleming & Wright, Honolulu, Hawaii, for defendants.

ORDER GRANTING IN PART AND DE-
NYING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS OR IN THE ALTERNA-
TIVE FOR SUMMARY JUDGMENT

DAVID A. EZRA, Judge.

Plaintiff Richard Morishige brings this action for wrongful discharge (Count I), promissory estoppel (Count II), slander and libel (Count III), breach of contract (Count IV), tortious breach of contract (Count V), intentional and/or negligent misrepresentation (Count VI—first), and intentional and/or negligent infliction of emotional distress (Count VI—second) against his former employer, defendant Spencecliff Corporation ("Spencecliff"), its parent company, and two of its board members.

This suit is currently before the court on defendants' motion for judgment on the pleadings or, alternatively, for summary judgment, pursuant to Fed.R.Civ.P. 12(c) and 56, respectively, as to all plaintiff's

claims excepting slander and libel. The following factual allegations are taken from plaintiff's and defendants' affidavits and submissions.

## I. *Background*

Plaintiff was employed by Spencecliff for approximately forty (40) years and held the position of Vice President—Government Liaison at the time of his discharge on July 1, 1988. In that capacity plaintiff was responsible, *inter alia*, for working with government agencies, such as the City and County of Honolulu ("City") Building Department and Liquor Commission, and for inspecting Spencecliff operations for compliance with health and building codes.

During plaintiff's employment, Spencecliff instituted specific policies and procedures to provide all its employees with job security and other benefits. Most of these policies and benefits are set forth in the Spencecliff Employees Guidebook ("Guidebook") which plaintiff personally participated in drafting.

Plaintiff maintains that prior to the sale of Spencecliff to it present owner, Nittaku Enterprises Co., Ltd. ("Nittaku"), any management employee who was considered for termination was given warnings and notice, and was normally provided severance pay if actually terminated. Moreover, former president and founder of Spencecliff, Spencer Weaver ("Weaver"), allegedly made representations to plaintiff that he could work "as long as [he] want[ed] to" and that any management employee who was terminated would be given two months severance pay.[1] Plaintiff avers that he relied on Weaver's assurances and on the representations, policies and procedures in the Guidebook, believing that he could be discharged only for good cause with prior notice, and severance pay.

In July, 1986 defendant Nittaku purchased Spencecliff and defendant Akiyoshi Nishimura, CEO of Nittaku, and CEO and chairman of the board of Spencecliff, put his son, defendant Eiji Nishimura ("Nishimura"), vice chairman of the board of Spencecliff, in charge of operating the company. Following the acquisition, Nishimura allegedly made specific representations that Nittaku would retain the Spencecliff name, substantially all its employees, and the policies, practices and procedures that were followed by the company while it was owned by Weaver. Nishimura also allegedly promised all employees long-term future employment with the company.

Plaintiff contends that eight to nine months prior to his termination, he mentioned to Nishimura that he was considering retirement. Plaintiff claims that Nishimura responded by asking him to stay with the company through the duration of certain planned renovations and a transition period "until the operation starts to run smoothly."[2] In addition, Nishimura allegedly stated that "because [plaintiff was] in good health, [he was] pretty sure [plaintiff could] work longer."[3] Plaintiff states that he relied on these promises and representations in continuing his employment with defendants, thereby foregoing his retirement.

During the course of certain construction renovations, plaintiff maintains that Nishimura authorized and ordered, over plaintiff's objections, certain work in violation of City building codes and liquor laws. Plaintiff contends that his objections to Nishimura's continued violations of these regulations and laws was one of the primary reasons he was discharged.[4]

In June, 1988 plaintiff was asked to resign, but he declined to do so. On July 1, 1988 plaintiff received a letter terminating his employment. Plaintiff asserts that he was given no prior notice or reason for his termination. He also claims he requested and was refused a meeting with Nishimura to discuss his termination. Defendants strenuously deny that plaintiff was discharged for his objections to Nishimura's

---

1. *See* Affidavit of Richard Morishige at ¶ 9 (attached to Plaintiff's Memorandum in Opposition filed July 6, 1989).

2. *Id.* at ¶ 12.

3. *Id.*

4. *Id.* at ¶ 19.

alleged continued violations of City building codes and liquor laws.

Defendants maintain they had a legal right to discharge plaintiff and rely on the "at will" employment doctrine and a disclaimer in the Guidebook reserving the company's "right to discontinue or change any policy or benefit at any time."[5]

## II. Decision of the Court

### A. Judgment on the Pleadings Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides in part as follows:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings...."

The dismissal on the pleadings is proper only if the moving party is clearly entitled to prevail. *Doleman v. Meiji Mutual Life Insurance Co.*, 727 F.2d 1480, 1482 (9th Cir.1984). All allegations of fact of the opposing party are accepted as true. *Id.* Generally, the court is unwilling to grant dismissal pursuant to Rule 12(c) "unless the movant clearly establishes that he is entitled to judgment as a matter of law." *Id.* (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 1368). To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(c).

### B. Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides for summary judgment when:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The movant bears the initial burden of "identifying ... those portions of the material on file that it believes demonstrates the absence of any genuine issue of material fact." *T.W. Electric Service, Inc. v. Pacif-*

ic Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). If the movant has met its burden, then "the non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party.'" *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). When the "evidence" produced by each side conflicts, "the judge must assume the truth of the evidence set forth by the opposing party with respect to that fact." Inferences from the facts, disputed and undisputed alike, must be drawn in the light most favorable to the opposing party. *T.W. Electric*, 809 F.2d at 631. These genuine factual issues must be supported by significant probative evidence. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). Hence, the non-moving party may not stand on its pleadings or merely assert it will controvert the movant's evidence at trial. *See T.W. Electric*, 809 F.2d at 630. Simple disagreement about a material issue of fact, therefore, no longer precludes the use of summary judgment. *California Arch. Bldg. Prod.*, 818 F.2d at 1466.

### C. Claims for Wrongful Termination

It is generally accepted that "in the absence of a contract for a definite period of time, employment is terminable at the will of either party for any reason or no reason." *Courtney v. Canyon TV Rental*, 3 IER 619, 621 (D.Hawaii 1988) (citing *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 374, 652 P.2d 625, 627 (1982); *Crawford v. Stewart*, 25 Haw. 226 (1919)). Defendants contend that plaintiff was never expressly promised that he would be discharged only for cause or that he would be employed for a definite period of time. It is therefore defendants' position that plain-

---

**5.** Guidebook at 41.

tiff could be discharged with or without cause at any time.

■ Plaintiff, however, correctly notes that the employment "at will" doctrine has been modified in Hawaii to recognize a cause of action for discharge in violation of a clear mandate of public policy, *Parnar*, 65 Haw. at 380, 652 P.2d at 631; and discharge contrary to an implied contract, *Kinoshita v. Canadian Pacific Airlines, Inc.*, 68 Haw. 594, 724 P.2d 110 (1986). *See Courtney*, 3 IER at 621. It is under the auspices of these two modifications of the "at will" doctrine that plaintiff seeks relief. Because the court received and considered matters outside the pleadings, defendants' motion in this regard shall be treated as one for summary judgment. Fed.R.Civ.P. 12(c).

### 1. Count I—Termination in Violation of Public Policy

■ As indicated previously, plaintiff contends that his discharge was prompted by his intolerance of defendants violations of City building codes and liquor laws and his refusal to participate in future intentional infractions. Plaintiff asserts that his discharge for these reasons violates a clear mandate of public policy. Defendants deny that plaintiff was discharged for the reasons he alleges.

In *Parnar*, the Hawaii Supreme Court recognized "that an employer may be liable in tort where his discharge of an employee violates a clear mandate of public policy." 65 Haw. at 380, 652 P.2d at 631. Plaintiff carries the burden of proving that a clear mandate exists under the circumstances and that the discharge at issue violates such a mandate. *Id.*

Defendants rely principally on *Smalley v. Fast Fare, Inc.*, 4 IER 105 (D.S.C.1988) (applying South Carolina law) where the court held that discharge of an employee for disclosing internal corporate improprieties did not affect public interest, especially where plaintiff was not faced with choosing between committing a criminal act and keeping her job. The internal corporate impropriety involved in *Smalley* was the

discovery and reporting by plaintiff of cash discrepancies which resulted in an audit.

However, in the instant case, the impropriety alleged involves external health, safety and welfare regulations, i.e., City building codes and liquor laws of importance to the general public. It also involves the plaintiff's refusal to perform his liaison function in the face of alleged intentional violations of these regulations. Therefore, *Smalley* is distinguishable on its facts and is not controlling.

Accordingly, in light of the dispute as to the underlying motivation for, and circumstances surrounding, plaintiff's discharge, there remains a genuine issue of material fact as to whether defendants' discharge of plaintiff contravenes a clear mandate of public policy. Defendants' motion for summary judgment as to Count I must therefore be denied.

### 2. Count IV—Breach of Implied Contract

■ In *Kinoshita, supra*, the Hawaii Supreme Court recognized that the right of employers to terminate at will "can be contractually modified and, thus, qualified by statements contained in employee policy manuals or handbooks issued by employers to their employees." 68 Haw. at 601, 724 P.2d at 115–116 (citations omitted). In recognizing this deviation from the "at will" doctrine, the court focused on "the intention of the employer" and "the consideration passed from the employee to the employer." *Courtney*, 3 IER at 621.

We think the employer here can hardly be free to selectively abide by the policies and procedures set forth in the Employee Rules which were "promulgated in an effort to defeat a unionization attempt." Surely, CP Air was *striving to create an atmosphere of job security and fair treatment, one where employees could expect the desired security and even-handed treatment without the intervention of a union*, when it distributed copies of the rules to the employees who were to vote in a representative election. It attempted to do so with promises of specific treatment in specific situations; *it encouraged reliance thereon,* particu-

larly during the second attempt at unionization, with statements that "our written employment arrangements with you ... constitute[ ] an enforceable contract" and "your rights in your employment arrangement are guaranteed." CP Air thus *"created a situation 'instinct with an obligation.'"* *Kinoshita,* 68 Haw. at 603, 724 P.2d at 117 (citations omitted) (emphasis added).

Plaintiff contends that defendants succeeded in creating an atmosphere of job security and fair treatment without the intervention of a union through the policies and procedures set forth in its Guidebook. He claims that a principal reason the Guidebook was created was to avoid unionization of Spencecliff employees, noting as evidence the provision in the Guidebook setting forth Spencecliff's position that unionization is unnecessary in light of the company's willingness to improve working conditions, increase benefits and settle differences.[6] As a consequence, plaintiff contends he was induced to remain as an employee. In further support of his position, plaintiff also points to additional portions of the Guidebook where it speaks of providing, *inter alia,* security, separation notice or allowance, and benefits such as sick leave, retirement and profit sharing to eligible employees.[7]

Defendants suggest that the facts here are distinguishable from those which lead the Hawaii Supreme Court to imply a contract at law in *Kinoshita.* Defendants draw on separate provisions in the Guidebook setting forth Spencecliff's commitment to abide by the wishes of the majority of its employees regarding unionization[8] and reserving the company's right to dis-

continue or change any policy or benefit at any time.[9] Defendants also cite *Courtney, supra,* and *Forbes v. Hotel Inter–Continental Maui,* 2 IER 833 (D.Hawaii 1987) where the court found the respective employee policy manuals in question did not give rise to an implied contract.

In both *Courtney* and *Forbes,* however, the manual at issue contained an express disclaimer preserving the "at will" relationship. The Guidebook in question here contains no such express disclaimer.[10] Further, there was no evidence in those cases that the respective handbooks were issued for the purpose of thwarting unionization thereby inducing acceptance of the policies and benefits outlined in the handbook as a contractual commitment in lieu of union representation.

Therefore, while the court agrees with the defendants that the mere existence of an employee guidebook such as the one in question here is insufficient to create an enforceable contract between the parties, it cannot be said as a matter of law that defendants are entitled to summary judgment on this claim. Plaintiff has raised material questions of fact, the resolution of which could be resolved in favor of either party, regarding whether the Guidebook and circumstances surrounding its adoption reach the level required in *Kinoshita* for implying the existence of a contract. There being genuine issues of material fact remaining, defendants' motion for summary judgment as to Count IV is denied.

### D. Count II—Claim of Promissory Estoppel

■ Plaintiff claims that pursuant to the doctrine of promissory estoppel: (1) he

---

**6.** The Guidebook contains the following proviso:
Spencecliff employees are not unionized. Your company has always tried to improve your working conditions and increase your benefits from year to year whenever possible.
We feel that you should not have to join a union and pay dues to get the recognition and benefits which you are already receiving.
We believe we can settle our differences between ourselves without bringing in outside third party interference and strife.
We do not believe that a worker should be forced to join a union and pay dues in order to work and earn a living unless he or she votes to do so in a secret election. Your

company will always abide by the wishes of the majority in this matter.
Guidebook at page 11–12.

**7.** *See* Guidebook generally.

**8.** Guidebook at 12.

**9.** *Id.* at 41.

**10.** The court notes the following statement made at p. 39 of the Guidebook:
It is the job, responsibility and prerogative of management to ... discharge, demote or discipline *for cause* ...

detrimentally relied on defendants' alleged promises and representations of long-term employment, fair and equitable treatment and job security, (2) defendant should have reasonably expected plaintiff to rely on such promises and representations, and (3) unjust enrichment in favor of defendants can only be avoided by enforcing these promises and representations. *See e.g., Ravelo v. County of Hawaii,* 66 Haw. 194, 658 P.2d 883 (1983).

Defendants maintain that the Hawaii Supreme Court has not recognized a cause of action based on promissory estoppel for continuing employment in an "at will" situation and therefore they are entitled to judgment as a matter of law. *See e.g., Stancil v. Mergenthaler Linotype Co., Inc.,* 589 F.Supp. 78, 83 (D.Hawaii 1984).

*Stancil,* however, fails to address *Ravelo, supra,* where the Hawaii Supreme Court held that detrimental reliance on a promise of "at will" employment is actionable. 66 Haw. at 199–200, 658 P.2d at 887. Defendants contend that *Ravelo* is inapplicable because it involved a promise for new "at will" employment, not a promise of continuing job security.

The court in *Ravelo* did not *per se* restrict application of the doctrine of promissory estoppel to offers of new employment, but rather took a flexible approach by adopting the revised Restatement of Contracts § 90 which provides:

(1) A *promise* which the promisor should *reasonably* expect to *induce action or forbearance* on the part of the promisee ... and which *does induce such action or forbearance* is *binding if injustice can be avoided only by enforcement* of the promise. The *remedy* granted for

breach *may be limited* as justice requires.

66 Haw. at 201–02, 658 P.2d at 87–88 (emphasis added).[11]

This court can find no rational basis for distinguishing promises for new employment and promises for continued job security provided the requisite elements of § 90 are satisfied. Therefore, to the extent plaintiff can prove his claim as set forth above, he states a cause of action under the doctrine of promissory estoppel.

Having failed to clearly establish that they are entitled to judgment as a matter of law, defendants' motion for judgment on the pleadings as to Count II of plaintiff's complaint is therefore denied.[12]

**E. Count VI (second)—Emotional Distress**

Plaintiff argues that he is entitled to seek damages for the emotional injuries he suffered as a result of defendants' alleged egregious conduct surrounding his discharge. Defendants contend that Hawaii's workers compensation statute preempts plaintiff's claims against them for these injuries.

This court has recently held that under Hawaii law, a "plaintiff's claims of emotional distress [precipitated by circumstances of his employment] are barred by the exclusivity provision of the workers' compensation statute." *Howard v. Daiichiya-Love's Bakery, Inc.,* 714 F.Supp. 1108 (D.Hawaii 1989); *see also Courtney,* 3 IER at 622. "Under the unitary test described in *Chung v. Animal Clinic, Inc.,* 63 Haw. 642, 650, 636 P.2d 721, 76 (1981), an illness or accident is covered by Hawaii's Work-

**11.** Relief would be limited to restitution, damages or specific relief measured by the extent of plaintiff's reliance rather than by the terms of the promises. *Ravelo,* 66 Haw. at 201 n. 4, 658 P.2d at 888 n. 4.

**12.** It should be noted that to the extent defendant Nishimura requested plaintiff to continue in the employ of the company until such time as the renovations and improvements had been made and the operations started to run smoothly, there arguably exists an oral contract for a determinable period which could be performed

within one year. *See Brown v. Koloa Sugar Co.,* 5 Haw. 67, 69 (1883) (oral contract which by its terms could be performed within one year does not violate statute of frauds). Plaintiff's change in position, that is, foregoing retirement, could very well be sufficient to form a binding contract. *C.f. Courtney,* 3 IER at 622 (promise to exert best efforts insufficient consideration). Accordingly, if plaintiff's allegations prove correct, he may be said to have an express contract for a definite time, the exact terms relating to severance being subject to dispute.

ers' Compensation Law, H.R.S. § 386, if there is a causal connection between the illness or injury and the incidents or conditions of employment. *Id.* at 649 [636 P.2d 721]." *Courtney*, 3 IER at 622.

The exclusivity provision of Hawaii's workers compensation law extends immunity to both the employer, Hawaii Rev.Stat. § 386–5, and co-employees acting within the scope of their employment, Hawaii Rev. Stat. § 386–8. However, co-employees are not relieved of liability to the extent a fellow employee's personal injury is caused by their "wilful and wanton misconduct." Hawaii Rev.Stat. § 386–8. Defendants concede the Nishimuras' status as co-employees.

▆▆ Plaintiff's claims for emotional distress in this instance are alleged to have arisen out of his termination and defendants' failure to follow the policies and procedures in the Guidebook. Accordingly, Hawaii's workers compensation law is his exclusive remedy as to the defendant corporations and defendants Akiyoshi and Eiji Nishimura insofar as they were acting on behalf of the corporations within the scope of their employment. *See e.g. Howard, supra; Courtney, supra.*[13] However, the exclusivity provision of the workers compensation statute does not bar plaintiff's claims against individual defendants Akiyoshi and Eiji Nishimura to the extent he can prove his alleged emotional distress injuries were caused by their "wilful and wanton misconduct." Hawaii Rev.Stat. § 386–8.

Therefore, defendants having clearly established that they are entitled to judgment as a matter of law as to the corporations, their motion for judgment on the pleadings is granted. For the same reason, defendants motion for judgment on the pleadings is granted as to defendants Akiyoshi and Eiji Nishimura insofar as they were acting within the scope of their employment and plaintiff's asserted injuries were not caused by their alleged "wilful and wanton misconduct."

Defendants having failed to clearly establish that they are entitled to judgment as a matter of law with respect to plaintiff's claims against individual defendants Akiyoshi and Eiji Nishimura for emotional distress injuries allegedly caused by their "wilful and wanton misconduct," defendants' motion for judgment on the pleadings as to this claim is denied.

### F. ERISA Preemption

▆▆ Defendants contend that Counts II, IV, V, and VI (first) and VI (second) of plaintiff's complaint fail to state a claim upon which relief can be granted insofar as they seek recovery of retirement and severance benefits under, and damages arising out of the administration of, defendants' employee benefit plan. It is defendants' position that these causes of action are preempted by the federal Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").

In support of their position, defendants cite a myriad of Ninth Circuit cases.[14] Plaintiffs, however, assert that many of these decisions have been called into question by more recent Ninth Circuit cases and

---

**13.** In support of his position, plaintiff cites *Lapinad v. Pacific Oldsmobile–GMC, Inc.,* 679 F.Supp. 991 (D.Hawaii 1988) where this court allowed an independent tort of intentional infliction of emotional distress arising out of a work-related injury. The court, however, has since affirmatively recanted its position in this regard. *See Leong v. Hilton Hotels Corp.,* Civ. No. 87–0840 (filed April 24, 1989) (order granting in part and denying in part defendants' motion for summary judgment). Hence, plaintiff's reliance on *Lapinad* is misplaced.

**14.** *See e.g., Nevill v. Shell Oil Company,* 835 F.2d 209 (9th Cir.1987); *Sorosky v. Burroughs Corporation,* 826 F.2d 794 (9th Cir.1987); *Martori*

*Bros. Distributors v. James–Massengale,* 781 F.2d 1349 (9th Cir.), *amended,* 791 F.2d 799, *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385 and 479 U.S. 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091 (9th Cir.1985); *Kuntz v. Reese,* 760 F.2d 926 (9th Cir.1985), *vacated, opinion withdrawn,* 785 F.2d 1410, *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499 (9th Cir.1985); *Russell v. Massachusetts Mutual Life Insurance,* 722 F.2d 482 (9th Cir.1983), *rev'd on other grounds,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), *vacated,* 778 F.2d 542 (9th Cir.1985).

thus, as a matter of law, defendants cannot show that they are clearly entitled to prevail. *See e.g., Martori Brothers,* 781 F.2d at 1357–58 n. 19.

"ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." *Massachusetts v. Morash,* —— U.S. ——, 109 S.Ct. 1668, 1671, 104 L.Ed.2d 98 (1989). This "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), regulates employee pension and welfare plans by "establish[ing] various uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility.…" *Metropolitan Life,* 471 U.S. at 732, 105 S.Ct. at 2385 (citing 29 U.S.C. §§ 1021–1031, 1101–1114). Moreover, "ERISA imposes upon pension plans a variety of substantive requirements relating to participation, funding, and vesting … [but] does not regulate the substantive content of welfare-benefit plans." *Id.* (citations omitted).

Thus, while ERISA "contains almost no federal regulation of the terms of benefit plans. It does … contain a broad pre-emption provision declaring that the statute shall 'supercede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan.'" *Metropolitan Life,* 471 U.S. at 732, 105 S.Ct. at 2385 (citing 29 U.S.C. § 1144(a)) (emphasis added). This express preemption provision is "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)).

"State law" is defined as "all laws, decisions, rules, regulations or other State action having the effect of law, of any State," 29 U.S.C. § 1144(c)(1), including claims "based upon common law of general application," *Metropolitan Life Ins. Co. v. Tay-*

*lor,* 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citing *Pilot Life,* 107 S.Ct. at 1553). Hence, if a state common law cause of action "relate[s] to … [an] employee benefit plan," it is preempted, 29 U.S.C. § 1144(a), provided the relationship is not "too tenuous, remote or peripheral[.]" *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. Congress intended the language "relate to" to be interpreted broadly. *Sorosky,* 826 F.2d at 799. Therefore, to the extent a state common law claim implicates a plan created by an employer or employee organization, it is preempted. *Id.* Conversely, to the extent a state common law claim does not implicate or relate to a benefit plan, it remains viable. *Id.* at 800.

"[P]reemption of state law claims by ERISA depends on the conduct to which such law is applied, not on the form or label of the law." *Scott,* 754 F.2d at 1504. Consequently, the court must evaluate whether the conduct challenged in each of plaintiffs' claims was part of the administration of an employee benefit plan. *Id.* at 1505.

Plaintiff's principal allegations in Counts II, IV, V, and VI (first) of his complaint are that defendants made promises and representations that plaintiff would have continued long-term future employment with Spencecliff; that he would be terminated only for cause, with notice and payment of severance benefits; and, upon retirement, he would be entitled to receive all retirement benefits provided pursuant to the Spencecliff employee benefit plan. Plaintiff further alleges that despite such promises and representations, he was discharged without cause or notice, denied retirement and severance benefits, and denied future wages. Plaintiff also claims he is entitled to recover punitive damages as well as other damages "in an amount to be shown at trial."

Pursuant to the United States Supreme Court's ruling in *Pilot Life, supra,* Counts II, IV, V, and VI (first) of plaintiff's complaint clearly "relate to" an employee benefit plan [15] and are thus preempted by ERISA to the extent they seek recovery of retirement and severance benefits under, or damages for conduct arising out of the administration of, defendants' employee benefit plan. *See Sorosky,* 826 F.2d at 800 (claims for breach of contract and breach of duty of good faith and fair dealing preempted to extent they refer to employer's preventing discharged employee from acquiring monthly retirement benefits); *Scott,* 754 F.2d at 1505 (state common law contract and tort claims preempted to extent conduct challenged part of administration of employee benefit plan).

 However, to the extent these claims seek future wages or any other damages unrelated to the employee benefit plan in question, they are not preempted nor barred by ERISA. *Sorosky,* 826 F.2d at 800.[16]

Counts II (promissory estoppel), IV (breach of contract), V (tortious breach of contract), VI (first) (intentional and/or negligent misrepresentation), and VI (second) (intentional and/or negligent infliction of emotional distress) of plaintiff's complaint must therefore be dismissed with prejudice insofar as they seek recovery of retirement and severance benefits under, and damages for conduct arising out of the administration of, defendants' employee benefit plan.

In this regard, defendants' motion for judgment on the pleadings is granted.

### III. *Conclusion*

1. Defendants' motion for summary judgment is denied without prejudice as to:

(A) Count I—wrongful discharge against public policy; and

(B) Count IV—breach of contract.

2. Defendants' motion for judgment on the pleadings is denied without prejudice as to Count II—promissory estoppel.

3. Defendants' motion for judgment on the pleadings as to Count VI (second)—intentional and/or negligent infliction of emotional distress—is granted with prejudice as to the (1) defendant corporations; and (2) defendants Akiyoshi and Eiji Nishimura insofar as they were acting within the scope of their employment and plaintiff's asserted damages were not caused by their alleged "wilful and wanton misconduct." Defendants' motion in this regard is denied without prejudice as to defendants Akiyoshi and Eiji Nishimura with respect to plaintiff's claims for emotional distress injuries allegedly caused by their "wilful and wanton misconduct."

4. Defendants' motion for judgment on the pleadings is granted with prejudice to the extent plaintiff seeks recovery of retirement and severance benefits under, or damages for conduct arising out of the

---

15. *See e.g., Morash,* 109 S.Ct. at 1673 (plans to pay employees severance benefits are employee welfare benefit plans within the meaning of ERISA) (citing *Brooks v. Burlington Industries, Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Holland v. Burlington Industries, Inc.,* 772 F.2d 1140 (4th Cir.1985), *summarily aff'd sub nom. Roberts v. Burlington Industries, Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986)); *Firestone Tire and Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 951, 103 L.Ed.2d 80 (1989) (termination pay, retirement, and stock purchase plans governed by ERISA).

16. Plaintiff argues that his tort and punitive damages claims against defendants Akiyoshi and Eiji Nishimura, individual officers and directors of Spencecliff, should nonetheless withstand ERISA preemption because a damage award made pursuant to these claims would not place any fiscal or administrative burden upon the employee benefit plan in question. Moreover, plaintiff contends that he does not have an equivalent remedy under ERISA because it does not provide for punitive damages.

The Supreme Court, however, has unequivocally stated that where claims, such as those referred to by plaintiff here, relate to an employee benefit plan or conduct arising out of the administration thereof, ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a), are the claimant's exclusive remedy. *Pilot Life,* 107 S.Ct. at 1556–57. Thereunder, "a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." *Id.* at 1556. Plaintiff is currently proceeding in this action without a § 1132(a) claim.

administration of defendants' employee benefit plan with respect to:

(A) Count II—promissory estoppel;

(B) Count IV—breach of contract;

(C) Count V—tortious breach of contract;

(D) Count VI (first)—intentional and/or negligent misrepresentation; and

(E) Count VI (second)—intentional and/or negligent infliction of emotional distress.

IT IS SO ORDERED.