Wallace J. **COURTNEY**,
Plaintiff–Appellant,

v.

**CANYON TELEVISION & APPLIANCE RENTAL, INC., David Manthei, Mark Bartholomew and Matt Pinkerton, Defendants–Appellees.**

No. 88–2961.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1989.

Decided March 23, 1990.

Elizabeth Jubin Fujiwara, Fujiwara & Fujiwara, Honolulu, Hawaii, for plaintiff-appellant.

Jared H. Jossem, John L. Knorek, Torkildson, Katz, Jossem, Fonseca & Moore, Honolulu, Hawaii, for defendants-appellees.

Before SNEED, KOZINSKI, and THOMPSON, Circuit Judges.

SNEED, Circuit Judge:

Wallace Courtney sued his former employer, Canyon Television & Appliance Rental, Inc. ("Canyon"), alleging wrongful discharge grounded in intentional racial discrimination, and alleging breach of contract, defamation, and intentional infliction of emotional distress. The district court granted Canyon's motion for summary judgment on all claims. Courtney then filed a motion for reconsideration which was denied. Courtney appeals both judgments. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

In June, 1986, Canyon Television Appliance and Rental, Inc., hired Wallace Courtney as a management-trainee for one of its several Hawaii stores. In November, 1986, Canyon transferred Courtney to a second store and promoted him, on a trial basis, to manager. Canyon terminated Courtney's employment in February 1987. Courtney, who is black, brought an action against Canyon and three members of its management (hereinafter referred to collectively as "Canyon"), alleging that his termination was the result of racial discrimination, as prohibited by 42 U.S.C. § 1981.[1] In addition, he brought four state claims, alleging that the termination breached implied and express contracts of employment, that he had been defamed by Canyon personnel

---

**1.** Section 1981 reads:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981 (1982).

during and after his discharge, and that he suffered emotional distress intentionally inflicted by Canyon personnel. On May 4, 1988, the district court issued an order granting Canyon's motion for summary judgment on all claims. Courtney then filed a motion for reconsideration, which was denied. Courtney appeals the summary judgment on four of the five claims and the denial of his motion for reconsideration.

## A. *Summary Judgment Appeal*

■ Courtney argues that summary judgment is disfavored in employment discrimination cases because the employer's intent, typically a factual determination, is at issue. In support of his claim that his discharge was motivated by discriminatory intent, he asserts that he was passed over for promotion from trainee to manager, and for promotion from manager of a smaller store to manager of a larger store.[2] He claims that Canyon placed non-black employees less qualified and less senior than he in those positions. He asserts further that Canyon treated him differently than it did other employees.[3]

Canyon responds that Courtney was treated no differently than other employees and that its termination of Courtney was justified. Specifically, it contends that Courtney had been instructed not to do "control reports during working hours," and that he continued to do so in defiance of this directive. In granting summary judgment, the district court determined that Courtney had "failed to establish any admissible evidence from which to infer discriminatory conduct and ... therefore failed to establish a *prima facie* case of racial discrimination." It held further that, even if such a case had been established, Canyon had proffered a legitimate nondiscriminatory ground for dismissal which Courtney had failed to rebut by producing admissible evidence that the asserted reason for his dismissal was but a "guise for discrimination."

■ In support of the breach of implied contract theory, Courtney alleges that certain sections of Canyon's Employee Handbook[4] altered the otherwise "at will" nature of employment.[5] Courtney asserts that the Handbook created an implied employment contract, violation of which is actionable. In response, Canyon emphasizes that its Employee Handbook affirms the noncontractual nature of its written policies and the "at will" nature of employment.[6] In granting summary judgment,

---

**2.** Canyon contends that Courtney first raises this latter issue in his appellate brief, and therefore that he cannot properly raise it before this panel. Canyon is technically correct. However, we believe that the wording of Courtney's complaint in relevant parts is sufficiently broad to encompass the issue ("Plaintiff was intentionally, routinely and systematically passed up by said Defendants for promotions for which Plaintiff was adequately qualified and trained, because he is black.").

**3.** Specifically, he stated that, unlike similarly situated employees, Canyon appointed him manager on a trial rather than a permanent basis, gave him inadequate staffing for completion of his required tasks, denied him the opportunity to earn productivity bonuses, and initially set his salary at a lower level than the company's pay scale indicated.

**4.** The relevant section of the Handbook stated that prior to dismissal, an employee would receive "a counseling session and ... extra training or development ... to achieve acceptable job performance."

**5.** Although Courtney argues in his appellate brief that the Handbook expressly altered the employment relationship such that employees could be terminated only for "just cause," Canyon contends that this argument was not raised below and therefore should not be raised before this panel. We agree. Although Courtney's complaint states that his "termination was made without good cause," he does not assert that the Handbook stipulated that employees could be terminated only for good cause. Rather, the complaint focuses on the specific procedural rights articulated in the Handbook.

**6.** An introductory letter accompanying the Handbook states that: [T]he various policies and benefits mentioned in this Handbook may be changed when deemed necessary by management. As a matter of policy, Canyon is not bound by the provisions of this Handbook and may make exceptions to its administration where, at the discretion of the company, such exceptions are warranted.

The Handbook also contains the following section:
*LEGAL STATUS OF THIS HANDBOOK*
This Employee Handbook does not represent contractual terms of employment. It is, rather, an explanation of employment policies

the district court concluded that Courtney had failed to raise a material issue of fact as to the binding effect of the employee guidelines.

Courtney, in opposition to Canyon's motion for summary judgment as it related to defamation, alleges that the following actions and statements by Canyon personnel were defamatory. Upon Courtney's dismissal, the new manager of the store made a count of cash and inventory of store merchandise in front of customers. Second, Courtney alleges that in response to inquiries about his whereabouts by customers a store manager stated that Courtney had been terminated for doing something illegal.

The district court determined that the cash count and inventory were reasonable actions, consistent with "the employer's rights, duties, and responsibilities." In addition, it concluded that Courtney had failed to offer admissible evidence that the alleged statements regarding illegal behavior were in fact made.

Finally, Canyon, with regard to Courtney's claims of intentional infliction of emotional distress, argued that the claim is barred by Hawaii's worker compensation statute. Alternatively, Canyon asserted that, absent facts to support a claim of wrongful discharge and to prove "unreasonable conduct" by Canyon, Courtney's claim for emotional distress was properly dismissed.

B. *Motion for Reconsideration Appeal*

The district court treated Courtney's motion for reconsideration as one to alter or amend under Fed.R.Civ.P. 59(e) and considered the propriety of relief under the standards set forth in Fed.R.Civ.P. 60(b).

Courtney made two additional arguments supporting his implied contract theory and submitted an affidavit in support of his defamation claim. The court rejected his contentions, one as duplicative of arguments raised in opposition to summary judgment, and the other because it assumed a proposition rejected in the order granting summary judgment. The court also refused to consider an affidavit, which alleged that the customer had been told that Courtney had been fired for "doing shady business." The district court stated that Courtney had failed to show that this evidence could not have been uncovered prior to his opposition to the motion for summary judgment.

## II.

### JURISDICTION

The district court had federal question jurisdiction of the 42 U.S.C. § 1981 claim under 28 U.S.C. § 1343(a)(4) (1982) and had pendent jurisdiction over the Hawaii state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). This court has appellate jurisdiction under 28 U.S.C. § 1291 (1982).

## III.

### STANDARD OF REVIEW

We review grants of summary judgment de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989); *State Farm Fire & Casualty Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989) (per curiam). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *State Farm*, 872 F.2d at 320.

This court construes motions for reconsideration under Fed.R.Civ.P. 59(e) as motions for relief under Fed.R.Civ.P. 60(b), and reverses only for abuse of discretion. *Van der Salm Bulb Farms, Inc. v. Hapag Lloyd*, 818 F.2d 699, 700 (9th Cir.1987) (per

subject to change by Canyon. No change in employment policy will be effective unless it is executed in writing by an authorized Canyon representative.

Employment at Canyon is *at-will.* That is, either you or Canyon may terminate the employment relationship at any time, with or without cause. The *at-will* relationship remains in full force and effect notwithstanding any statements to the contrary made by company personnel or set forth in any documents.

curiam); *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir.1985).

## IV.

## DISCUSSION

### A. *Race Discrimination—Section 1981*

■ After the district court granted Canyon's motion for summary judgment, the Supreme Court decided *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in which the Court held that section 1981's reach is restricted to prohibition of "discrimination only in the making and enforcement of contracts." *Id.,* 109 S.Ct. at 2372. "Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief." *Id.* The Court further underscored its position by pointing out that section 1981's prohibition against racial discrimination in the *making* of contracts "extends only to the formation of a contract, but not to problems that may arise later...." *Id.* Thus, in the employment context, refusal to hire an employee on the basis of race is actionable under section 1981, whereas subsequent harassment or maltreatment of an employee on account of race is not. "[P]ostformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations ..., matters more naturally governed by state contract law and Title VII." *Id.* at 2373. The Court explicitly stated that "breach of the terms of the contract" is postformation conduct that is not actionable under section 1981. *Id.* The Court confined the reach of section 1981 concerning the *enforcement* of contracts to "protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race." *Id.*

■ Consistent with *Overby v. Chevron USA, Inc.,* 884 F.2d 470 (9th Cir.1989), we apply *Patterson* retroactively to cases pending in this circuit at the time *Patterson* was decided. We see no reason to depart from this practice in the instant case.

■ Courtney does not allege that Canyon refused to hire him, or that it interfered with his exercise of his legal rights to enforce his contract once it did hire him. Rather, Courtney alleges that Canyon wrongfully discharged him because of his race. Discharge is the type of postformation "breach of contract" conduct not protected by section 1981. *Id.* at 473. Disputes concerning employee discharge may not be brought under section 1981 because the right " 'to make' a contract is ... not implicated." *Id.*[7] Therefore, we affirm the district court's grant of summary judgment. Because Courtney's action under *Patterson* could have been dismissed for failure to state a claim, there being no allegations that could be construed as alleging a *Patterson* claim, we see no need to remand to the district court to permit it to reconsider the case in the light of *Patterson.*

### B. *Breach of Implied Contract*

■ In Hawaii, employment contracts of indefinite duration, such as Courtney's, are "typically held to be terminable at the will of either party, for any reason or no rea-

7. In *Patterson,* the Supreme Court held that:

[T]he question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

109 S.Ct. at 2377. The Seventh Circuit recognized that the distinction between promotions that offer a "new and distinct relation" and those that do not is somewhat unclear. *Malho-* *tra v. Cotter & Co.,* 885 F.2d 1305, 1311–12 (7th Cir.1989). It opined that the distinction may turn on whether or not a promotion entailed a new and distinct *contractual* relationship between employer and employee. *Id.* at 1311. We note that we need not decide here whether Canyon's decisions not to promote Courtney would have been actionable under section 1981. Although Courtney alleged that Canyon failed to promote him, he did so to provide evidence of Canyon's alleged differential treatment of blacks, in support of his wrongful discharge claim. Nowhere does he allege failure to promote as a separate cause of action.

son." *Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 374, 652 P.2d 625, 627 (1982). Two exceptions to this doctrine are recognized in Hawaii. First, "an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy."[8] *Parnar,* 65 Haw. at 380, 652 P.2d at 631. Second, an employee manual can constitute an implied contract, obligating the employer to abide by the rules set forth in the manual. *Kinoshita v. Canadian Pac. Airlines,* 68 Haw. 594, 724 P.2d 110 (1986). Specifically, " 'if an employer [chooses] to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it.' " *Kinoshita,* 724 P.2d at 117 (citation omitted).

■ In contrast with the facts in *Courtney,* the facts in *Kinoshita* presented a very clear case for creation of an implied contract. There the employment policies were promulgated with a cover letter stating that the policies constituted "an enforceable contract between us under [the] labour law of the state in which you work. Thus your rights in your employment arrangement are guaranteed." *Kinoshita,* 724 P.2d at 114 n. 2. In the instant case, Canyon explicitly stated that its Handbook did *not* reflect contractual terms of employment, and that, at any time, management could make unilateral changes in or exceptions to the policies. In addition, Courtney has failed to present any evidence to suggest that Canyon's actions were not consistent with the disclaimer.[9] Thus, applying the *Kinoshita* standard, no reasonable jury could find that Canyon encouraged its employees' reliance upon its Handbook either as an implied contract or even as stating permanent or consistent

policies. Therefore, summary judgment on this issue was proper.

## C. *Defamation*

In Hawaii, to prove defamation of a person who is not a public figure, a plaintiff must establish four elements:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher ...; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Beamer v. Nishiki,* 66 Haw. 572, 578–79, 670 P.2d 1264, 1271 (1983).

■ Turning to the issue of privilege first and assuming that the cash count and inventory procedures were false and defamatory "statements," were they privileged? In Hawaii, a "qualified privilege 'arises when the author of the defamatory statement reasonably acts in the discharge of some public or private duty ... and where the publication concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty.' " *Vlasaty v. Pacific Club,* 4 Haw.App. 556, 562, 670 P.2d 827, 832 (1983) (citation omitted). Whereas performance of a cash count and merchandise inventory clearly is a reasonable action by an employer under this standard, doing so in an obvious manner in front of customers may not be privileged. "The interest or duty of the recipients is essential to the privilege." *Aku v. Lewis,* 52 Haw. 366, 371, 477 P.2d 162, 166 (1970). Customers clearly do not have an "interest or duty" in this aspect of Canyon's business affairs.[10] Nonetheless, there are nei-

---

**8.** In *Parnar,* the discharged employee made known her concern about her employer's possible violation of antitrust laws. 65 Haw. at 372, 652 P.2d at 626–27. The court held that retaliatory discharges of employees in such situations were against public policy. *Id.* at 380, 652 P.2d at 629.

**9.** Courtney did not show that management or staff relied much on the Handbook on a day-to-day basis, nor did he show that other managers were terminated according to Handbook guidelines.

**10.** In *Vlasaty,* the statement was made by a private club president to supervisory employees of the club and concerned an alleged theft by a

ther allegations nor evidence suggesting that the cash account and inventory could have been done in a less public manner. On this basis, we hold that the assumed false and defamatory statements were privileged under Hawaii law.

■ In opposing Canyon's motion for summary judgment, Courtney also alleged that the manager who succeeded him at Canyon told customers that Courtney had been fired for doing something illegal. In support of this motion, Courtney's only evidence that these statements were in fact made consisted of his own assertions to that effect. These assertions are not included within any exception to the hearsay rule, and therefore are inadmissible at summary judgment. *See generally* Fed.R. Evid. 801–806. Federal Rule of Civil Procedure 56(e) requires that, in opposing summary judgment, affidavits "shall set forth such facts as would be admissible in evidence...." The statements would be admissible only if they fell within an exception to the hearsay rule under the Federal Rules of Evidence, and they do not. *See* Fed.R.Evid. 803–806; *Fong v. American Airlines, Inc.*, 626 F.2d 759, 762–63 (9th Cir.1980). Therefore, summary judgment on the defamation claim was proper.

D. *Emotional Distress*

Canyon asserts that Courtney's emotional distress claim was barred by Hawaii's workers' compensation statute which provides exclusive[11] remedies for "personal injury ... arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment." Haw.Rev.Stat. § 386–3 (1985). Hawaii case law does not dispose of Canyon's assertion definitively.

Although the Hawaii Supreme Court has not considered the specific question before us, three federal district courts applying Hawaii law have done so. One held that claims for intentional infliction of emotional

distress arising from wrongful discharge are not barred by the workers' compensation statute. *See Lapinad v. Pacific Oldsmobile–GMC, Inc.*, 679 F.Supp. 991, 996 (D.Haw.1988). More recently, however, two courts reached the opposite result. *See Morishige v. Spencecliff Corp.*, 720 F.Supp. 829 (D.Haw.1989); *Howard v. Daiichiya–Love's Bakery, Inc.*, 714 F.Supp. 1108 (D.Haw.1989).

■ The *Morishige* and *Howard* decisions appear to us to embody a correct analysis of Hawaii law. The Hawaii Supreme Court has set out a "unitary test," holding that the statute provided coverage for injuries as long as there is a "causal connection between the injury and any incidents or conditions of employment ... regardless of where or when the injury" took place. *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 648–49, 636 P.2d 721, 725–26 (1981). In a subsequent case, the court concluded "that HRS § 386–5 was a 'clear expression of legislative intent to absolve the employer of *all liability save that imposed by statute.'"* *Hanagami v. China Airlines, Ltd.*, 67 Haw. 357, 688 P.2d 1139, 1144 (1984) (per curiam) (citation omitted). Finally, in a third case, the Hawaii Supreme Court also explicitly held, although not in the wrongful discharge context, that "psychogenic disability precipitated by the circumstances" of employment is a work-related injury "within the meaning of" the workers' compensation statute. *Royal State Nat'l Ins. Co. v. Labor & Indus. Relations Appeal Bd.*, 53 Haw. 32, 38, 487 P.2d 278, 282 (1971). Thus, we hold that under the law of Hawaii, Courtney's claim is barred.

■ However, even should we be in error, Courtney would not prevail. He has failed to produce evidence sufficient to raise a triable issue on the merits of his emotional distress claim. In order to show intentional infliction of emotional distress

---

club employee, a matter of common interest to the speaker and recipients of the statement. 4 Haw.App. at 562, 670 P.2d at 832.

**11.** *Section 386–5 provides:*

The rights and remedies herein granted ... on account of a work injury suffered by the employee shall *exclude* all other liability of the employer to the employee ... on account of the injury.

Haw.Rev.Stat. § 386–5 (1985) (emphasis added).

in Hawaii, a plaintiff must prove "(1) that the act allegedly causing harm is intentional; (2) that the act was unreasonable; and (3) that the actor should have recognized that the act was likely to result in illness." *Wong v. Panis*, 772 P.2d 695, 700 (Haw. App.1989). Courtney has failed to provide any evidence that Canyon's conduct was "unreasonable," *see Rodrigues v. State*, 52 Haw. 156, 173, 472 P.2d 509, 520 (1970) (holding that "serious mental distress may be found [only] where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case"), or that Canyon should have expected the acts surrounding discharge to result in emotional distress. In the memorandum summarizing Courtney's opposition to summary judgment,[12] Courtney stated without elaboration that the *"manner* in which [he] was fired amounted to a deliberate attempt to exacerbate the shock resulting from his termination." This assertion provides insufficient opposition to Canyon's motion for summary judgment. Discharge, without evidence of more, does not create a case for emotional distress. *Lapinad v. Pacific Oldsmobile–GMC, Inc.,* 679 F.Supp. 991, 996 (D.Haw.1988) (employer must have engaged in some conduct that goes beyond merely firing employee for purportedly unfair reasons). Therefore, the district court's grant of summary judgment on this claim was proper. We affirm the district court's grant of summary judgment in its entirety.

### E. Motion for Reconsideration

Finally, the district court did not abuse its discretion in denying Courtney's motion for reconsideration in all respects, and therefore, we affirm the district court's judgment.

AFFIRMED.

---

**12.** Courtney's counsel presented his opposition orally at a March 21, 1988, hearing. Subsequently, he submitted a written memorandum summarizing the arguments he had previously presented orally.