106 F.3d 407
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL TRADE COMMISSION, Plaintiff-Appellee,
v.
NCH, INC., a corporation, dba National Clearing House;
Robbin McLaurin; James Hart, Defendants-Appellants.
 No. 95-16893.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 10, 1996.
Decided Jan. 15, 1997.
 
 Before: FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Clearing House ("NCH"), Robbin McLaurin ("McLaurin"), and Jim Hart ("Hart") timely appeal the district court's order granting summary judgment in favor of the Federal Trade Commission. We review the district court's summary judgment order de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 ALLEGED GENUINE ISSUES OF MATERIAL FACT
 
 3
 The appellants raise four issues that they claim present genuine issues of material fact that must be determined at trial. We address each of these issues in turn.
 
 
 4
 A. The Credibility of the Founder of Operation Life
 
 
 5
 The appellants argue that Ms. Henderson is not a credible witness and her credibility presents a material issue to be determined at trial. The appellants, however, have offered no evidence, other than bald assertions, why Ms. Henderson should not be believed. The information in her declaration was corroborated by two other leaders of charitable organizations in the Las Vegas area. The appellants never attempted to depose Ms. Henderson, nor did they offer evidence that the information in her declaration was false. The mere assertion on appeal that a witness is not credible does not present a genuine issue of material fact.
 
 
 6
 B. Misrepresentations of Operation Life's Activities
 
 
 7
 The FTC offered substantial evidence regarding the actual charitable activities of Operation Life and contrasted these activities with evidence of the activities represented to consumers by NCH solicitors. To counter this evidence, the appellants offered the language of the contract between NCH and Operation Life, which states that Operation Life had "expended considerable time, effort, and money in the development of a unique program for feeding and housing the needy, health care, and developing other social programs for the poor."
 
 
 8
 The contract's language itself does not constitute evidence that NCH's solicitors did not, during the course of their telephone calls to consumers, misrepresent the nature and scope of Operation Life's charitable activities. Further, the evidence of specific misrepresentations made by NCH's solicitors extends far beyond the scope of the contractual language regarding the purported activities of Operation Life.
 
 
 9
 The affidavit by McLaurin, stating that Ruby Duncan, a former president of Operation Life, told him that the organization "was going to continue to be able to help needy children and homeless throughout the United States and provide shelter for children, women and the homeless," is inadmissible hearsay and cannot be used to defeat a motion for summary judgment. Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 851 (9th Cir.1990). In light of the substantial evidence offered by the FTC and the absence of evidence offered by the appellants, there is no genuine issue of material fact as to whether NCH's solicitors misrepresented the charitable activities of Operation Life.
 
 C. The Failure to Award the Valuable Prizes
 
 10
 The appellants do not contest that they promised to send consumers one of the four top prizes if the consumer made a donation to Operation Life and that none of these top prizes were ever awarded. The appellants argue, however, that a genuine issue remains as to whether this failure to award the prizes was due to their fraudulent activities or the Government's actions in searching the offices of NCH and freezing various bank accounts.
 
 
 11
 The appellants offer evidence that the Government froze NCH's bank accounts in Denver less than two months after NCH began soliciting contributions for Gleaners. This evidence, however, is irrelevant to NCH's ability to award prizes from contributions solicited for Operation Life. These two business ventures were separate and independent, and there is no evidence that they depended on each other for financial support.
 
 
 12
 The FTC alleged that NCH never had any intention of awarding the valuable prizes and that this was only part of the pitch to induce a donation. The FTC offered evidence that NCH received and deposited over $2 million in contributions. Several consumers were told that their prizes were already in the mail and they should expect receipt in the next couple of days.
 
 
 13
 The appellants attempt to counter this evidence by offering the affidavit of Hart, stating that NCH had a business plan that included the award of the valuable prizes, but appellants fail to offer any specific details or other documents containing such a plan. A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir.1993); United States v. One Parcel of Real Property, 904 F.2d 487, 492 n. 3 (9th Cir.1990).
 
 
 14
 No valuable prizes were ever awarded to any of the consumers and all of the admissible, credible evidence in the record demonstrates that NCH did not have any intention of awarding the valuable prizes. The appellants' bald assertions and self-serving affidavits to the contrary do not create a genuine issue of material fact.
 
 
 15
 D. Representations Regarding the Goldrush Prize
 
 
 16
 The district court found that NCH solicitors guaranteed consumers that they would receive a prize worth no less than $3,500. The appellants argue that one of the prizes offered to consumers was a chance to receive a fair share of the $25,000 goldrush prize. Some consumers did receive minor awards, including plaques, jewelry, and gold colored coins, that ostensibly qualified as their fair share of the goldrush, but were valued at less than $100. The appellants argue that there is a genuine issue as to whether the goldrush representations were deceptive. The appellants are incorrect.
 
 
 17
 A representation is deceptive and violates Section 5 of the Federal Trade Commission Act ("FTCA") if its net impression is likely to mislead consumers, even if the representation is literally true. See Sterling Drug, Inc. v. FTC, 741 F.2d 1146, 1154 (9th Cir.1984), cert. denied, 470 U.S. 1084 (1985). The test for a violation of Section 5 of the FTCA is whether the representations are likely to deceive consumers. FTC v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir.1994), cert. denied, 115 S.Ct. 1794 (1995).
 
 
 18
 There is evidence that NCH did not begin including the "fair share" language in its sales pitch until November 1993, four months after it began soliciting for Operation Life. None of the solicitation scripts in the record before the district court include the words "fair share" when describing the goldrush prize. The only reasonable conclusion consumers could draw from the solicitation pitch, and the only conclusion that the actual consumers in fact drew, is that the goldrush prize was worth $25,000.
 
 
 19
 The FTC offered additional evidence regarding the deceptive nature of NCH's sales pitch. The prizes were always listed in what appeared to be descending order ($50,000; $25,000 goldrush; $5,000; and $3,500), giving the impression that the goldrush prize was worth $25,000. The district court also found that the solicitation script's statement that the $3,500 prize was the "lowest cash settlement" offered by NCH reinforced the impression that the goldrush was worth $25,000. The net impression created by the solicitation script in the mind of the consumer was that a donation to Operation Life guaranteed the consumer at least $3,500.
 
 
 20
 The appellants concede that "some of the consumers may have been misled," but assert that depositions by two NCH solicitors provide evidence that they never guaranteed consumers any specific gift. This evidence does not create a genuine issue of material fact. Besides the fact that such representations would have deviated from the prepared script which solicitors were required to follow, these depositions do not refute the substantial evidence provided by the FTC that scores of consumers were in fact deceived into believing that they were going to receive a prize worth at least $3,500.[1]
 
 
 21
 The appellants have not presented evidence sufficient to create a genuine issue of material fact regarding the deceptiveness and misleading nature of the representations regarding the goldrush prize.
 
 CONCLUSION
 
 22
 After carefully reviewing the record in this case and considering all of the appellants' arguments on appeal, we AFFIRM the district court's order granting summary judgment in favor of the FTC.
 
 
 23
 Appellee's motion for leave to respond to a point raised in appellants' rebuttal at oral argument is DENIED as moot.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The appellants also argue that they have not had an opportunity to cross-examine the consumers who were deceived by the solicitation pitch. They give no reason why they failed to depose even a single consumer. Therefore, this assertion on appeal cannot defeat summary judgment